IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VINCENT CARTER,<br><br>    Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., ANGELA CRAIN, CONNIE DOLCE, KELLY PIERCE, WARDEN WILLS, DIRECTOR HUGHES, GOVERNOR PRITZKER, KEVIN REICHERT, KLUMP, J. LAWRENCE, JOHN DOE TACT TEAM MEMBERS, OFFICER WILLIAMS, JOHN DOE #1 IA OFFICER, JOHN DOE #2 IA OFFICER, JOHN DOE #3 MEDICAL DIRECTOR, JANE DOE NURSE, JOHN DOE #4 SEG OFFICER, JOHN DOE #5 SEG OFFICER, and JOHN DOE #6 SERGEANT,<br><br>    Defendants. | Case No. 24-cv-2265-NJR |

## MEMORANDUM AND ORDER

**ROSENTENGEL, Chief Judge:**

Plaintiff Vincent Carter, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Carter alleges that Defendants were deliberately indifferent to his conditions of confinement as well as to his need for medical care.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

1

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On May 16, 2023, while housed in Menard's East Cellhouse, Carter was assaulted by unknown inmates (Doc. 1, pp. 15-16). As a result of the assault, Carter suffered with migraines, headaches, a shoulder injury, and ear problems (*Id*. at p. 22). Carter was initially escorted to the healthcare unit and received an x-ray that confirmed a broken nose (*Id*.). But he did not receive any additional medical care. After the x-ray, he was placed in segregation (*Id*. at pp. 16, 22). A few hours after the assault, Carter's nose began to bleed again but he had to wait until a nurse made her rounds before receiving help (*Id*. at p. 22). Nurse Jane Doe #2, John Doe #4, and John Doe #5 walked through the unit. Carter stopped them, informed them of his injuries, and showed them the blood on his hands and nose (*Id*.). The nurse told him that she could not help him, that the doctor was not at the prison, and that he would have to submit a sick call request slip to be seen (*Id*. at pp. 22-23). He requested gauze or tissues to help with the bleeding, but the officers and nurse denied his request. They reiterated that he would have to submit a sick call request (*Id*. at p. 23). They then walked off laughing (*Id*.). Carter alleges that his nose bled for at least four hours, and he never received care for his injuries (*Id*.).

Carter submitted a sick call request slip but did not receive any care (Doc. 1, p. 23). He alleges that his broken nose affected his sinuses and ears (*Id*. at p. 10). At some point,

his ears started leaking fluid (*Id*.). Jane Doe Nurse #1 examined his ears but told him nothing was wrong with them (*Id*.). Carter alleges that she misdiagnosed his condition, and his ears were infected (*Id*.). He submitted several sick call requests and grievances about his condition, but he alleges that he did not receive care in a timely fashion (*Id*. at p. 11). His ears continued to fill and then leak out a foul-smelling, green fluid (*Id*.) He also did not receive surgery to fix his broken nose until December 2023 (*Id*.). Due to the delays in receiving adequate care, Carter alleges that he eventually lost partial hearing in his ears (*Id*. at pp. 10-11). Carter submitted several requests for a hearing test to ADA Coordinators Lawrence and Klump, but they never responded to his request slips or letters (*Id*. at pp. 11-12). He asked a nurse why he had not been examined and she responded that they were overwhelmed with the number of sick call request slips (*Id*. at p. 12). As a result, Carter never received a hearing test or a hearing device.

Carter alleges that he submitted numerous sick call request slips and grievances to no avail (*Id*. at p. 12). He also stated in his grievances that he was losing his hearing. But when grievance officials Kelly Pierce, Kevin Reichert, Connie Dolce, and Angela Crain responded to his grievances, they ignored his ADA issues (*Id*.).

Carter alleges that Wexford Health Sources, Inc. deliberately understaffs the healthcare unit at Menard (Doc. 1, p. 4). The understaffing causes delays in medical care for all inmates at the prison (*Id*.). Carter alleges that Wexford purposefully understaffs the healthcare unit in order to save money. Because of understaffing, Carter experienced delays in treating his broken nose and damaged ears (*Id*. at p. 5). He went at least seven months without treatment for his broken nose and ear infections (*Id*.). When he did see

3

medical staff, Carter alleges the nurses lacked training and were unable to provide him with adequate care for his injuries (*Id*.).

Carter alleges that Warden Wills, IDOC Director Hughes, and Governor Pritzker were also aware of Wexford's inadequate medical care due to the lawsuit *Lippert v. Jeffreys* (Doc. 1, p. 6). Despite the lawsuit, Carter alleges that these officials turned a blind eye to the problems with medical care at Menard (*Id*.). Carter wrote grievances about his medical care and Warden Wills deemed those grievances an emergency (*Id*. at pp. 6-7). He also wrote letters to Warden Wills, Director Hughes, and Governor Pritzker in June and July 2023, informing them of his lack of adequate medical care for his nose (*Id*. at pp. 6-7). He alleges that the grievances were ignored, and he never received a response to his letters (*Id*. at p. 7). Carter filed his grievance in June 2023, and the grievance was reviewed by Wills and Director of Nurses Connie Dolce (*Id*. at pp. 7-8). Warden Kevin Reichert signed off on the findings (*Id*. at p. 8). He alleges that it took ten months to receive a reply to his first grievance submitted in June 2023 (*Id*.).

Carter also takes issue with the conditions at Menard. He alleges that all of Menard is understaffed, including the healthcare unit and security (Doc. 1, p. 13). When Carter was assaulted, he was housed in the East Cellhouse. Carter alleges that this is the worst cellhouse at Menard. The cellhouse is unsanitary, understaffed, and dangerous (*Id*.). The cells are overcrowded, and two inmates are housed in a cell designed to hold only one inmate (*Id*. at pp. 13-14). Inmates in the cellhouse include new inmates from intake, as well as inmates with high aggression levels, weapons violators, staff assaulters, C-Grade, mentally ill, and those recently released from segregation (*Id*.). Due to understaffing, the

officers do not make as many rounds which allows for violence in the cellhouse (*Id*. at p. 14). Staff also limit out-of-cell time for the inmates due to limited staff (*Id*.). Carter alleges these limitations on inmates leads to mental and physical degradation and causes more violence in the cellhouse (*Id*.). Carter alleges that Director Hughes, Warden Wills, Warden Reichert, and Governor Pritzker are aware of these issues as well as the need for out-of-cell activity (*Id*. at pp. 14-15).

But Carter alleges that he did not receive adequate out-of-cell activity and the conditions caused him to lose weight, as well as suffer from headaches, anxiety, and depression (*Id*. at p. 15). Carter also alleges the conditions created a climate of violence which led to several attacks on him. He was assaulted twice and stabbed. Despite requests to be housed in another part of the prison, internal affairs officers kept placing him back in the East Cellhouse (*Id*.). Carter was initially assaulted on the yard resulting in a broken hand (*Id*. at p. 16). He was later assaulted outside of his cell resulting in his broken nose (*Id*.). After his release from segregation in June 2023, Carter was again placed back in the East Cellhouse (*Id*.). Carter informed Sergeant John Doe #6 that he feared for his safety after the May 2023 assault (*Id*.). But Sergeant John Doe #6 ignored his requests and failed to document his concerns with internal affairs (*Id*.). Carter alleges that Sergeant John Doe ignored policy and protocol regarding inmate safety concerns (*Id*. at p. 17).

Carter also alleges that tactical team members fail to follow proper safety protocols (*Id*.). During shower times, the tactical team is supposed to strip search each inmate and then escort them upstairs to the showers. Once at the showers, additional tactical team members are supposed to pat down the inmate again before allowing them into the

showers (*Id.*). The security protocol is designed to prevent stabbings which Carter alleges have happened numerous times at Menard (*Id.* at p. 17). Due to understaffing, however, tactical team members are working long hours and often fail to follow the proper protocols (*Id.*). As a result, on July 2, 2023, Carter alleges that the inmates were not properly search by tactical team members prior to entering the showers (*Id.*at p. 18). In the showers, two inmates assaulted Carter and stabbed him (*Id.*). Although the tactical team members were nearby and saw the assault, they stood there for up to two minutes before intervening (*Id.* at pp. 18-19).

After the assault, Carter was placed in segregation. He submitted letters to internal affairs, including Officer Williams, informing them of his safety concerns. Williams never responded. On July 13, 2023, two internal affairs officers (John Doe #1 and John Doe #2) questioned Carter about the prior assaults (*Id.* at p. 19). Despite Carter informing them of the assaults, his injuries, and fears for his safety, the officers informed Carter that he would be placed back in the East Cellhouse (*Id.*). Despite his previous assaults and officials' knowledge of the dangers in the East Cellhouse, Wills, Hughes, Reichert, and Pritzker turn a blind eye to the conditions in the cellhouse (*Id.* at p. 21). Carter further alleges that as policymakers, they are responsible for remedying the issues that led to his assault. He alleges that the failure to fix the conditions in the East Cellhouse have subjected Carter to emotional distress (*Id.*).

## **Preliminary Dismissals**

Although Carter identifies a Jane Doe Nurse #2 who failed to provide him with care for his broken nose, Carter fails to identify the nurse as a defendant in the case

6

caption. *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005). Thus, any claim against Jane Doe Nurse #2 is **DISMISSED without prejudice**. Carter also identifies John Doe #3 medical director as a defendant in the case caption but fails to include any allegations against the medical director in his statement of claim. Thus, any potential claim against John Doe #3 is also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Jane Doe #1 for failing to provide him with medical care for Carter's broken nose and injured ears.**
>
> **Count 2:** **Eighth Amendment deliberate indifference claim against ADA Coordinators Lawrence and Klump for failing to provide Carter care and testing for his injured ears.**
>
> **Count 3:** **ADA and/or Rehabilitation Act claim against Coordinators Lawrence and Klump for failing to provide Carter with a hearing test.**
>
> **Count 4:** **Eighth Amendment deliberate indifference claim against John Doe #4 and John Doe #5 for failing to provide Carter with care for his bloody nose.**
>
> **Count 5:** **Eighth Amendment deliberate indifference claim against Wills, Reichert, Dolce, Pierce, and Angela Crain for ignoring Carter's requests for care and denying his grievances.**
>
> **Count 6:** **Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for purposefully understaffing the healthcare unit in order to save money.**
>
> **Count 7:** **Eighth Amendment deliberate indifference claim against Warden Wills, IDOC Director Hughes, and Governor**

|  |  |
|---|---|
|  | Pritzker for failing to remedy systemic issues with the healthcare unit at Menard Correctional Center. |
| **Count 8:** | Eighth Amendment conditions of confinement claim against Warden Wills, IDOC Director Hughes, Warden Reichert, and Governor Pritzker for failing to remedy systemic issues with understaffing, overcrowding, and conditions in the East Cellhouse. |
| **Count 9:** | Eighth Amendment failure to protect claim against Sergeant John Doe #6, John Doe #1 Internal Affairs Officer, John Doe #2 Internal Affairs Officer, and Officer Williams for ignoring Carter's concerns regarding his safety in the East Cellhouse. |
| **Count 10:** | Eighth Amendment failure to protect claim against John Doe Tactical Team Members for failing to stop the assault on Carter in the showers. |
| **Count 11:** | Illinois state law claim for intentional infliction of emotional distress against Wills, Hughes, Reichert, and Pritzker for turning a blind eye to the conditions in the East Cellhouse. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard.**[1]

---

[1] This includes any claim against the Illinois Department of Corrections because IDOC is not a "person" amendable to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983"). *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Counts 1, 2, and 4**

At this stage, Carter states viable claims for deliberate indifference in Counts 1, 2, and 4. He alleges that Jane Doe #1 examined him but improperly diagnosed his condition. Carter also alleges that she failed to provide him with any care for his injuries. Carter also adequately alleges that he requested a hearing test and care from Lawrence and Klump but they failed to provide him with a hearing test due to the backlog of patients at the prison. Finally, Carter alleges that he requested care from John Doe #4 and John Doe #5 for his broken nose while in segregation and they refused his request for care. That is enough to state a claim for deliberate indifference at this stage.

**Count 3**

Carter also adequately alleges a claim pursuant to Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and/or the Rehabilitation Act, 29 U.S.C. §§ 794-94(e). In order to state a claim under the ADA and/or the Rehabilitation Act, Carter must allege that (1) he is a qualified person with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by the entity; and (3) the denial or discrimination was because of his disability. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Here, Carter adequately alleges that he suffered from hearing loss as a result of his injuries but was denied a hearing test in order to obtain hearing aids (Doc. 1, p. 11). The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA and/or Rehabilitation Act. *Jaros*, 684 F.3d at 670. The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n.

2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his/her official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity only, as the proper defendant for Carter's claim in Count 3.

**Count 5**

Carter fails, however, to state a claim for deliberate indifference against grievance officials. To the extent that he alleges grievance officials ignored his complaints and requests for care in his numerous grievances, the simple denial or mishandling of a grievance does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). Thus, Carter's claim in Count 5 against the grievance officials is **DISMISSED without prejudice**.

**Count 6**

Carter states a viable claim against Wexford for the practice of understaffing the healthcare unit. Wexford can only be liable for deliberate indifference if it had a policy or practice that caused the constitutional violation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Here, Carter alleges that Wexford had a practice of deliberately understaffing the healthcare unit at Menard in order to save money. He alleges that the understaffing of the healthcare unit delayed care for his broken nose and ear infections, resulting in prolonged pain and permanent hearing loss. Carter also alleges that Wexford had a policy

of allowing non-medical personnel and unqualified nurses to diagnose individuals which led to the misdiagnosis of his broken nose. Thus, Count 6 shall proceed against Wexford.

**Count 7**

Carter also alleges a viable claim against officials who failed to remedy the issues with medical care at Menard. As to his claim against Wills, Hughes, and Governor Prizker, these high-ranking officials cannot be liable simply in their positions as supervisors because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Carter, however, alleges that the warden, director, and governor were aware of problems with the healthcare at Menard due to a previous lawsuit regarding medical care provided by Wexford and that they turned a blind eye to these issues. He also alleges that he wrote letters to these officials about his need for medical care. "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quotations omitted). Carter alleges that he wrote letters to these officials and includes copies of those letters with his Complaint. Carter alleges that despite knowledge of the issues with medical care at the prison and his specific need for care, these officials turned a blind eye to the issues at Menard. At this stage, his allegations state a claim for deliberate indifference.

**Count 8**

Similarly, Carter adequately alleges that Wills, Reichert, Hughes, and Pritzker turned a blind eye to the conditions in the East Cellhouse that led to Carter's assault.

11

Carter also alleges that he wrote to the wardens, director, and governor informing them about the dangers in the East Cellhouse after his May 2023 assault, and they ignored his concerns. Carter continued to be housed in the East Cellhouse and faced an additional assault in July 2023. Thus, Count 8 will proceed against Wills, Reichert, Hughes, and Pritzker.

**Count 9**

Carter also adequately alleges that he informed officials at the prison of his concerns regarding his safety in the East Cellhouse, but he continued to be housed there. At this stage, Carter adequately alleges that he spoke to Sergeant John Doe #6, John Doe #1 Internal Affairs Officer, John Doe #2 Internal Affairs Officer, and Officer Williams but they ignored his fears and placed Carter in the East Cellhouse.

**Count 10**

Carter fails, however, to allege a claim against tactical team members. Although he adequately alleges that officers failed to protect him from the July 2023 assault, he has only identified unknown tactical team members. Although Carter may certainly allege claims against identified John/Jane Does (*i.e.*, John Doe #1, John Doe #2), he refers only to "tactical team members". These claims are too generic to survive threshold review as he does not describe the individuals on shower duty or even state the number of them. Thus, Count 10 against "tactical team members" is **DISMISSED without prejudice**.

**Count 11**

Finally, Carter seeks to bring a claim for intentional infliction of emotional distress because the wardens, director, and governor failed to remedy the conditions in the East

Cellhouse. But in order to state a claim against the defendants, Carter must show that the officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 161 Ill.2d 374, 393 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). But other than stating in conclusory fashion that their actions caused infliction of emotional distress, Carter fails to establish any of the elements of the claim. Thus, Count 11 is **DISMISSED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Jane Doe #1. Count 2 shall proceed against Lawrence and Klump. Count 3 shall proceed against Latoya Hughes, in her official capacity only. Count 4 shall proceed against John Doe #4 and John Doe #5. Count 6 shall proceed against Wexford Health Sources, Inc. Count 7 shall proceed against Warden Wills, IDOC Director Hughes, and Governor Pritzker. Count 8 shall proceed against Warden Wills, Warden Reichert, IDOC Director Hughes, and Governor Pritzker. Count 9 shall proceed against Sergeant John Doe #6, John Doe #1 Internal Affairs Officer, John Doe #2 Internal Affairs Officer, and Officer Williams.

Count 10 against John Doe Tactical Team Members, Count 11 against Wills, Hughes, Reichert, and Pritzker, and Count 5, as well as all claims against Connie Dolce, Kelly Pierce, Angela Crain, Jane Doe #2, and John Doe #3 are **DISMISSED without prejudice**.

13

The Clerk of Court shall prepare for Defendants Lawrence, Klump, Latoya Hughes (individual and official capacity), Warden Wills, Warden Kevin Reichert, Governor Pritzker, Officer Williams, and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Carter. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Carter, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**Because Carter's claims involve his medical care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order.**

If judgment is rendered against Carter, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Carter is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  December 12, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**